UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

E.L.O. CORPORATION,

      PLAINTIFF,

V.

THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,

      DEFENDANTS.

CASE NO.: 1:25-CV-12337

JUDGE ROBERT W. GETTLEMAN

MAGISTRATE JUDGE LAURA K. MCNALLY

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTIONS TO DISMISS

Plaintiff, E.L.O. Corporation ("ELO" or "Plaintiff"), by and through its undersigned counsel, hereby submits its Response in Opposition to the pending Motions to Dismiss the Complaint for Lack of Personal Jurisdiction (collectively referred to as the "Motions"), filed by forty two (42) defendants listed on Exhibit 1, attached hereto ( "Responding Defendants"). [31], [37], and [38]. The Responding Defendants seek to dismiss the Complaint on the sole ground of a lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2)). *Id.* Plaintiff respectively requests that the Motions be denied in their entirety as personal jurisdiction is proper against all defendants in this case, including Responding Defendants.

### I.    PROCEDURAL HISTORY

On October 9, 2025, Plaintiff filed its Complaint alleging trademark infringement (of Plaintiff's "ThighMaster Trademark")[1] against foreign-based e-commerce sellers, offering for sale and selling infringing and counterfeit products (the "Counterfeit Products"). [1]. On October 20, 2025, Plaintiff filed its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), which the Court

---

[1] A true and correct copy of the ThighMaster Trademark registration was attached to the Complaint as Exhibit 1. [1-1].

granted on October 31, 2025. [15] and [24]. On December 3, 2025, the Court extended the TRO with respect to the Responding Defendants until December 10, 2025. [42].

On November 20, 2025, six (6) of the Responding Defendants (identified on Exhibit 1 as "Group I"), jointly filed a Motion to Dismiss Under Rule 12(b)(2). [31]. On December 2, 2025, twenty (20) Responding Defendants ("Group II"), jointly filed a Motion to Dismiss Under Rule 12(b)(2). [37]. On the same day, a third group of sixteen (16) Responding Defendants ("Group III") jointly filed a Motion to Dismiss Under Rule 12(b)(2). [38]. While filed separately, the Motions contain the same arguments and operative facts. As such, Plaintiff responds collectively to the three Motions.

## II.   FACTUAL DISCREPANCIES

Responding Defendants argue that they have made no sales into Illinois, providing affidavits to that effect. These declarations submitted in support of Responding Defendants' Motions state that all of the forty-two (42) Responding Defendants have "never sold or shipped any accused products to Illinois" and thirty (30) of those Responding Defendants claim they "have never sold or shipped any accused products to the U.S." However, sales data provided by Walmart, in response to Plaintiff's subpoena, paints a different picture. See Exhibit 1, attached to the Declaration of Alison K. Carter ("Carter Decl."). The Walmart data conflicts with the information provided by at least a quarter of all Responding Defendants – specifically, six (6) Defendants state no sales were ever made into the U.S. at all, when the subpoena data shows that, collectively, these Defendants have sold eighteen products into the U.S., and have misrepresented their sales information in their respective Declarations. Additionally, six (6) Responding Defendants, who have admitted to selling accused products into the U.S. (albeit not into Illinois), have provided sales figures below those that were supplied by Walmart. *Id.* Finally, one Defendant – Def. 301. LE66YE (Group III) – states in its Declaration, "LE66YE has never sold or shipped any accused products to Illinois. The records show only one sale of the accused

product, and the sale was not made or shipped to Illinois." See Declaration of LiPing Liu [38-15] at ¶ 5. However, this Defendant made twenty six sales into the United States – two of which were sold and shipped into Illinois. See Carter Decl. at ¶ 2, and Exhibit 1. Responding Defendants' misrepresentations of their sales amounts (and where they were shipped) should cause the Court to doubt the veracity of the Defendants' affidavits, and conclude that Plaintiff has met its burden of proving multiple sales into the United States, and to Illinois residents.

## ARGUMENT

### A. Specific Personal Jurisdiction over Responding Defendants is Proper

"[A]ny analysis of specific personal jurisdiction must consider three separate requirements." *NBA Props., Inc. v. The P'ship, et al.*, 549 F. Supp. 3d 790, 793 (N.D. Ill. 2021) (citing *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008)). "First, the defendant must have 'minimum contacts with the forum state.'" *Id.* at 793-94. "Second, the plaintiff's claims must 'arise out of' the defendant's contacts with the forum." *Id.* (citing *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009)). "Third, and finally, maintenance of the suit must not 'offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Kinslow*, 538 F.3d at 691). Plaintiff respectfully asserts that all three requirements are met with respect to the Responding Defendants.

In *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 392-93 (7th Cir. 2020), the Seventh Circuit determined that personal jurisdiction was proper over a non-resident defendant operating through e-commerce store operators:

> We are satisfied that [Defendant] has formed sufficient minimum contacts with Illinois…[Defendant] sells its products only online through its website and third-party websites. [Defendant's] interactive website for the sale of its product requires the customer to select a shipping address. Illinois is among the "ship-to" options from which the customer must choose…
>
> [Defendant's] own actions in establishing these commercial contacts with Illinois fairly can be described as purposeful. Preparing to engage in commercial activity, [Defendant] created an interactive website and explicitly provided that Illinois

residents could purchase its products through that website. It further arranged for the sale of its products.

949 F.3d at 399.

Courts within this district routinely follow *Curry* and exercise personal jurisdiction over international e-commerce store operators, including Walmart storefronts. *See, for example, Tommy Hilfiger Licensing, LLC, et al. v. the P'ships, et al.*, No. 20 C 7477 (N.D. Ill. March 24, 2021) (Dkt. 46) ("Hilfiger has offered evidence tending to show that [defendant], though not physically located in Illinois or even in the United States, operated an interactive website through which it purposefully offered products for sale to consumers, including consumers located in Illinois, who would then select an address where the products would be shipped, including Illinois as one of the options. This is enough to amount to [defendant] having purposefully availed itself of doing business in Illinois."); *Mori Lee v. P'ships*, No. 19 C 7555 (N.D. Ill. May 14, 2020) (Dkt. 60) (same); *Volkswagen AG v. iman365-usa*, No. 18 C 6611, 2020 WL 977969, at *4 (N.D. Ill. Feb. 28, 2020) (same). Additionally, in *OUYEINC LTD. V. ALUCY et al.,* No. 20 C 3490 (N.D. Ill. June 25, 2021) (Gettleman, R.) (Dkt. 154), this Court, in reversing an earlier decision, ultimately found personal jurisdiction over ecommerce eBay sellers proper when because the defendants "directed their activities to Illinois" by operating eBay storefronts which require the seller to select specific shipping locations where the seller wishes to ship their products, and in selecting Illinois as a location the defendants would ship to, that the eBay sellers created a storefront that specifically targets Illinois residents. Here, Plaintiff provides information in the Carter Decl. which demonstrates the process for listing and selling products on Walmart is similar to the facts in *OUYINC LTD* regarding eBay sellers.

Additionally, Plaintiff submitted evidence including a checkout page, with an Illinois address, for each of Responding Defendants. These screenshots confirm that Responding Defendants operating the Walmart ecommerce storefronts specifically and affirmatively targeted Illinois as a shipping

location. Under the Seventh Circuit precedent discussed above, and based on the interactive nature of the Walmart ecommerce storefronts, Responding Defendants have purposefully availed themselves of doing business in Illinois. Consequently, personal jurisdiction is proper over these defendants. *See generally, OUYEINC LTD. V. ALUCY et al.,* No. 20 C 3490 (N.D. Ill. June 25, 2021) (Gettleman, R.) (Dkt. 154). *See also, Volkswagen Group of America, Inc. v. HUGE_SOURCE*, No. 21-cv-04705, Dkt. [74], (N.D. Ill. Feb. 9, 2022) (This Court, holding that sellers who create online storefronts and select Illinois as a specific shipping location they wish to ship their products, those sellers have "specifically targeted Illinois as a location to ship [their] products, thereby specifically targeting Illinois residents.")

Defendants argue "The Seventh Circuit has held that operating a website that is accessible in the forum state, but does not specifically target the forum state, does not create specific personal jurisdiction. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 801–02 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see also Gullen v. Facebook.com, Inc.,* No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016). While Defendants accurately state the applicable law in the Seventh Circuit, they have mischaracterized their relation to this forum stating, "When all a defendant does is make a website available in a forum state, the defendant's relation to the forum is "entirely fortuitous, depending wholly on activities outside of the defendant's control." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803." These, however, are not the facts in the present case. In the creation of Walmart storefronts and listing the accused products, Responding Defendants did more than simply "make a website available" in Illinois; and – contrary to the Motions – Responding Defendants' relation to this forum is *not* "entirely fortuitous, depending wholly on activities outside of the defendant's control."

5

When a Walmart seller creates a store, and whenever that store adds a product, the seller must select the region to which they are willing to sell. Additionally, sellers can "edit the shipping region by choosing Edit regions and select the . . .the region or state. [Walmart sellers] can also make more granular selections by using each state's dropdown menu." It is also important to note that, the _default_ setting on a Walmart store does _not_ include the option to ship into Illinois (or any state). By default, states not included in a seller's "defined zones" won't be able to place orders. A Walmart seller has to navigate to the regional settings of their store and choose specific states to include or exclude a state as a "deliverable" state. This process allows the seller to control the delivery of its products on the Walmart platform, preventing orders from certain areas or states if a seller chooses not to serve them. Walmart sellers are not passive in the process of setting up a store, in listing a product, or in designating the shipping region into which the seller is willing and able to ship products. *See* Carter Decl.

Attached to Plaintiff's memorandum in support of its Motion for Temporary Restraining Order, Plaintiff submitted evidence[2] that each Defendant – including Responding Defendants – was willing and able to sell and ship the infringing products into Illinois. This evidence establishes that Responding Defendants, operating on the Walmart platform, affirmatively took steps to specifically *include* Illinois as a region/state into which they are willing to sell and ship their products – as, in order for Plaintiff to have arrived at the checkout page on Walmart, with an Illinois address as the "ship to" address, it is established that Defendants took active steps in ensuring that Illinois is a "deliverable state."

The argument and outcome may be different if Responding Defendants asserted that they use the "Fulfillment by Walmart" program, and that they just ship their product to a fulfillment center and then it's "outside of their control" – however, in the present case, as shown on the evidence for each Responding Defendant, relevant excerpts attached to the Carter Decl. as Exhibit 2, Responding

---

[2] Attached hereto as Exhibit 2 is the relevant evidence for all Responding Defendants.

Defendants both <u>sell and ship</u> the accused products themselves, and do not use a fulfillment carrier or third-party for shipping. By using the "Seller Fulfilled" option on the Walmart marketplace, as opposed to Walmart Fulfillment Services, the seller has complete control over shipping and delivery, and from where products may purchased. Carter Decl. at ¶ 7. Accordingly, Defendants have purposefully directed its activities at the forum state and have thus purposefully availed themselves of the privilege of conducting business in Illinois. *See also*, *Volkswagen Group of America, Inc. v. HUGE_SOURCE*, No. 21-cv-04705, Dkt. [74], (N.D. Ill. Feb. 9, 2022) (This Court in *Volkswagen v. HUGE_SOURCE*, held that sellers who create online storefronts and select Illinois as a specific shipping location they wish to ship their products, those sellers have "specifically targeted Illinois as a location to ship [their] products, thereby specifically targeting Illinois residents.")

### B. General Jurisdiction over Responding Defendants is Proper

Defendants argue the Court lacks general jurisdiction over Defendants because they are Chinese entities incorporated in China. Defendants' argument that they have no office or employees in Illinois, nor do they have any telephone lines in Illinois misses the "minimum contacts" mark. The very nature of the business of operating an e-commerce store is markedly different from the situation in which a seller maintains a brick-and-mortar physical store. However, the fact that an e-commerce seller does not have a physical storefront does not shield it from liability for trademark infringement.

Responding Defendants' only argument is to allege that they have made no actual sales into Illinois. Firstly, that argument is not factually accurate – as sales have been made into Illinois by Responding Defendants. Secondly, actual sales are not required to establish jurisdiction. This Court has found personal jurisdiction proper in cases similar to the present one, where a single offer to sell an infringing product into this Judicial District was found to be sufficient to confer personal jurisdiction. *See CamelBak Products, LLC v. The Partnerships et al.,* 20-cv-1544 [75] (Defendants' motion to dismiss and to withdraw the case are denied for the reason stated in open court.), *See also,*

*Mori Lee v. Gouwucraze, et al.* 19-cv-7555[60] (N.D. Ill, May 14, 2020) (Kennelly, J) ("[Plaintiff] has offered evidence tending to show that [Defendant] though not physically located in Illinois or even in the United States, operated an interactive website through which it offered products for sale to consumers located in Illinois, who would then select an address where the products should be shipped, including Illinois as one of the options. This is enough to amount to [Defendant] having purposefully availed itself of doing business in Illinois."); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015) ("defendants' offers to sell counterfeit Monster Energy Products on their Internet stores constitute tortious activity committed in Illinois sufficient to establish personal jurisdiction"). The Seventh Circuit found jurisdiction proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Mori Lee v. Gouwucraze, et al.* 19-cv-7555[60] (N.D. Ill, May 14, 2020) (quoting *Illinois v. Hemi Grp. LLC,* 622 F.3d 754). Like the defendants in *Mori Lee, Camelbak, Monster Energy,* and *Hemi,* the Responding Defendants in this case purposely availed themselves of the privilege of doing business in Illinois, and stood ready and willing to do business with Illinois residents through their fully interactive commercial Walmart stores, therefore personal jurisdiction is proper.

In *Hemi Group*, the Seventh Circuit found that it had personal jurisdiction over defendants because they operated a nationwide business model where they intentionally created and operated several commercial, interactive websites to offer products for sale and allow online orders from Illinois residents. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757-58 (7th Cir. 2009). In so finding, the Court stated that jurisdiction is proper where a company "h[olds] itself out as open to do business with every state" and is "ready and willing to do business with [that state's] residents." *Id*. at 758. Following the Seventh Circuit's decision in *Hemi Group*, courts in this district have regularly exercised personal jurisdiction over offshore Internet stores offering shipping to the United States, including Illinois. S*ee,*

*e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at \*6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell infringing product to United States residents, including Illinois; no actual sale required); *Burberry Limited, et al. v. Weng Junpeng, et al.*, No. 15-cv-7994 (N.D. Ill. Oct. 2, 2015) (unpublished) ("[a] single tortious act committed in Illinois, no matter how minimal, brings the alleged tortfeasors within the scope of the long arm statute and thus demonstrates that personal jurisdiction is proper in Illinois"); *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d 897, 906 (N.D. Ill. Sept. 29, 2015) (personal jurisdiction properly asserted over defendants who offered to sell counterfeit products to all fifty states, including Illinois, through an Internet store; no sale required).

Responding Defendants do not attempt to distinguish the Seventh Circuit's decision in *Hemi Group*, even though it is controlling law and despite its factual similarities to this case. Likewise, Courts have expressly rejected Responding Defendants' argument that "no products were sold to Illinois, thus personal jurisdiction is not proper." *Valtech, LLC v. 18th Ave. Toys Ltd.*, No. 14 C 134, 2015 U.S. Dist. LEXIS 17138, at \*12 (N.D. Ill. Feb. 12, 2015) (Defendant "aimed [its] alleged tortious products to residents in all fifty states and 'made [its] services available to anyone by way of [its] website[s],'" and "[c]haracterizing the sales as unilateral is misleading . . . because it ignores several of [Defendant's] own actions that led up to and followed the sales.")

For the same reasons, Responding Defendants are also subject to jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) provides for personal jurisdiction through nationwide service of process over any defendant provided where: (1) the plaintiff's claims are based on federal law; (2) no state court could exercise jurisdiction over the defendants; (3) the exercise of jurisdiction is consistent with the laws of the United States; and (4) the exercise of jurisdiction is consistent with the Constitution. *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th

Cir. 2000). Since Responding Defendants intentionally and knowingly offered for sale products to United States residents, personal jurisdiction is also proper under Rule 4(k)(2).

### C. No Sale is Required to Establish Personal Jurisdiction

While the Responding Defendants in this case have made sales into Illinois, according to the Seventh Circuit, "[i]n evaluating whether the *prima facie* standard [of personal jurisdiction] has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (citing *Nelson by Carson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir. 1983).

Additionally, Plaintiff alleged in its Complaint and argued in its supplemental memorandum that, at the very least, the Responding Defendants "work[] in active concert with one another" even if their stores do not share the same owner. *See* [21]; [1] at ¶ 4. Specifically, the Declaration of Gouthami V. Tufts details several commonalities and connections across the Defendants, and demonstrates how most, if not all, are owned and/or operated by the same individual or entity.[3] In addition, the Responding Defendants have not disputed these allegations of joint ownership and/or cooperation in either their Motion or supporting declarations. As such, for the present Motion, the Court should hold these relevant facts in Plaintiff's favor. All of which is to say that because Def. No. 301. LE66YE, has sold infringing products into Illinois, any personal jurisdiction found over this Defendant would naturally extend to the remaining Responding Defendant, as each store, and the individual or entity operating the stores, have been shown to have sufficient minimum contacts with the State of Illinois.

---

[3] While the actual ownership and relationship between and among Responding Defendants is unclear, several of the stores are – by Defendants' own admission – owned by the same person or entity. See also Carter Decl. at Exhibit 5, which highlights shared address and contact information for Responding Defendants.

### D. Exercising Personal Jurisdiction Over Responding Defendants is Consistent with Traditional Notions of Fair Play and Substantial Justice

Finally, fair play means that offshore ecommerce sellers decide to offer for sale and sell products to consumers in the United States, including Illinois, must come to the United States and stand accountable for conduct relating to such sales. *Christian Dior Couture, S.A. v. Lei Liu et al*., 2015 U.S. Dist. LEXIS 158225, at 13 (N.D. Ill. Nov. 17, 2015). Responding Defendants "certainly should not be surprised by the jurisdictional consequences of [their] actions" given that it had sufficient resources to purposefully avail itself of the Illinois market. *Id.* at 14 (quoting *Hemi Grp., LLC*, 622 F.3d at 758). As such, Responding Defendants could and should have reasonably foreseen being subjected to jurisdiction in Illinois.

The exercise of specific personal jurisdiction must also comport with traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). That a foreign corporation avails itself of "the benefits of an economic market in the forum State" is sufficient to establish personal jurisdiction "even if it has no physical presence in the State." *Quill Corp*., 504 U.S. at 307; see also, *Heritage House Restaurants, Inc. v. Cont'l Funding Grp., Inc*., 906 F.2d 276, 281 (7th Cir. 1990) (stating that "[t]he physical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute" and that "[w]here a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant").

Under the plain language of 15 U.S.C. § 1114 and 35 U.S.C. § 271, an offer to sell an infringing item, even without any other activity, establishes liability for trademark counterfeiting and infringement. *Levi Strauss v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997). See also *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d at 903 n.4 ("Infringement of trademark is a tort"). As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may

11

exercise personal jurisdiction over Defendant. *Monster Energy Company v. Chen Wensheng, et al.*, 136 F. Supp. 3d at 904 (holding that "[d]isplaying photos of an item for sale and inviting potential purchasers to place an order and buy the product through an Internet store is an offer for sale"); *Dental Arts Lab., Inc. v. Studio 360 the Dental Lab, LLC*, 2010 U.S. Dist. LEXIS 124029, at *7 (N.D. Ill. Nov. 23, 2010) ("As long as one tortious act is committed in Illinois, the courts of the state, and thus this Court, may exercise personal jurisdiction over Defendant."; *Store Décor Division of Jas International, Inc. v. Stylex Worldwide Industries, Ltd.*, 767 F. Supp. 181, 184 n.3 (N.D. Ill. 1991) ("the commission of a single tortious act in Illinois brings a defendant within the scope of § 2-209(a)(2) even if the defendant has no other contact with Illinois and has never been to Illinois."). As established above, Defendant's offer for sale to Illinois residents without more is a tortious act committed in Illinois.

Responding Defendants argue that there are not sufficient minimum contacts between Responding Defendants and the State of Illinois because "[Responding] Defendants made no sales or shipments of the accused products into Illinois." However, the focus is whether the Responding Defendants purposefully directed their conduct at Illinois. *See NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022). Online retailers "form minimum contacts with a forum when they 'stand ready and willing to do business with' residents of the forum and then 'knowingly do business with' those residents." *NBA Props v. P'ships*, 549 F. Supp. 3d at 794 (cleaned up) (citing *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010)).

Finally, the Court must examine whether "subjecting [the Responding Defendants] to jurisdiction in Illinois offends our traditional notions of fair play and substantial justice." *HANWJH*, 46 F.4th at 627. In *NBA Props., Inc. v. HANWJH*, the Seventh Circuit has made clear that there is "no unfairness in making a seller defend a suit in a state where it structured its business to 'easily serve the

state's consumers.'" *Id.* (citing *Curry*, 949 F.3d at 402). "There is no unfairness in requiring a defendant to defend a lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much." *Id.* (cleaned up) (quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). The Seventh Circuit then went on to rule that the suit did not violate the traditional notions of fair play and substantial justice because (1) the plaintiff has an interest in ensuring its trademark was protected in the Illinois market, (2) Illinois has an interest in protecting its consumers from fraudulent merchandise, and (3) the defendant alleged no unusual burden in defending the suit in Illinois.

Here, as in *NBA Props., Inc. v. HANWJH*, (1) Plaintiff has an interest in ensuring its ThighMaster Trademark is protected in the Illinois market; (2) Illinois has an interest in protecting its consumers from fraudulent merchandise, such as the Counterfeit Products; and (3) Responding Defendants have alleged no unusual burden in defendant the suit in Illinois.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Responding Defendants' Motions be denied in their entirety, as this Court's exercise of personal jurisdiction over Responding Defendants is proper.


Dated: December 9, 2025                              Respectfully submitted,

                                                     <u>/s/ Ann Marie Sullivan</u>
                                                     Ann Marie Sullivan
                                                     Alison K. Carter
                                                     Gouthami V. Tufts
                                                     John J. Mariane

                                                     **SULLIVAN & CARTER, LLP**
                                                     111 W. Jackson Blvd., Ste. 1700
                                                     Chicago, Illinois 60604
                                                     www.scip.law
                                                     929-724-7529
                                                     j.mariane@scip.law

                                                     ***ATTORNEYS FOR PLAINTIFF***